Harriet A. MILLER, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16606.

United States Court of Appeals
Ninth Circuit.

May 19, 1960.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Wm. Bryan Osborne, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Russell E. Parsons, Beverly Hills, Cal., for appellant.

Before STEPHENS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was indicted and charged in six counts of causing a check to be transported in interstate commerce with intent to defraud. 18 U.S.C. § 2314. After various continuances and change of pleas, a jury convicted appellant on all six counts. She was ordered to serve six concurrent sentences of a year and a day, running consecutively to sentences imposed in another case. The court below had jurisdiction, and on timely appeal, so do we. 28 U.S.C. § 1291.

The facts are not in dispute. Appellant freely admitted cashing six checks locally drawn on the Omaha National

Bank of Omaha, Nebraska. She signed the checks "Mrs. Eugene Chase Eppley."

Harriet A. Miller claimed she had married Mr. Eppley and after his death she thought, under his will, she was entitled to draw the checks. The question before the jury was—did appellant, in good faith and without intent to defraud, believe herself to be the widow at the time she wrote and cashed the checks?

Robert C. Randel testified he was a Probate Judge and ex-officio clerk of Nemaha County, Kansas. The witness stated he was authorized to perform marriages in Kansas; that he had seen Mrs. Miller; that she made application for a marriage certificate to marry one Eugene C. Eppley. The witness then testified that Mr. Eppley was an old man; that the defendant and appellant told him this; that he had had a stroke; they had finally decided to get married; a marriage license was issued to her; i. e., a marriage license was issued to Eugene C. Eppley and Harriet Miller; that after the marriage license was issued, she said that she wanted him, the judge, to perform the ceremony; she said Mr. Eppley had a stroke; he wasn't very active; she was asked if she wanted help to bring him in; she said, no, she could bring him in; she went out and got him. She had stated in the application for the marriage that he was seventy-nine years old; the man walked in, and the witness stated obviously he wasn't nearly seventy-nine years old. He then asked the man present, "Are you 79?" and he replied, "No, I am 49." He then asked Harriet Miller why she had said that, and she said she was mixed up. The marriage certificate was changed to forty-nine instead of seventy-nine. He stated that as the man came in he was limping on one leg; his arm acted useless; he talked in a hoarse whisper, and as he was leaving the courtroom, he (Randel) noticed something that looked like powder on his hair; his hair was "sort of white." They left the courtroom; she was hanging on to his arm lightly; they went out to the car; then they drove off; the man drove the car away; there were two or three children in the back of the car. The witness identified a photostatic copy of a marriage certificate bearing his signature; he stated that it was a photostatic copy of a marriage certificate issued at Seneca, Kansas, on the 31st of July, 1958. It was received as Exhibit G in evidence.

On cross-examination, the witness stated that he was not certain whether proxy marriages were recognized in Kansas, but that a putative wife was; also common law marriage was recognized as lawful in Kansas.

Mr. Randel further testified that at the time of the marriage there were no statements made to him by anyone that Mr. Geer was standing in proxy for Mr. Eugene C. Eppley.

Witness Lyn Phillip Geer testified he had heard the testimony of Mr. Randel concerning the marriage ceremony performed in Seneca, Kansas, between Geer and Mrs. Miller; that he was the party who represented himself as Mr. Eppley. The witness stated he had taken Mrs. Miller to the Fontenelle Hotel a few times to see Mr. Eppley; that he had been married to Mrs. Miller, and that he had had a discussion with her in March of 1958 as to whether their marriage had been lawful; that in this conversation Mrs. Miller stated she felt their marriage was not lawful due to some technicality; and that she was going to talk to Mr. Eppley about marrying her. In March, she had talked to him, she said, and he, Eppley, felt it would be all right if they performed a proxy marriage; they talked it over; they then went to Kansas and were married; that sometime later that year he came to California with Mrs. Miller. The witness stated as far as he knew he was performing a proxy marriage on behalf of Mr. Eppley. The witness testified that upon three occasions he had been convicted of felonies, and was presently serving a term in a federal institution.

On cross-examination, the appellant was asked by the district attorney whether she had ever used the name Hermine Goldberg, or passed herself off as such.

She was then asked if she had represented herself as Mrs. Goldberg; she said she had not.

The United States Attorney was permitted to ask the witness whether she went through a marriage ceremony with Lyn Phillip Geer under the name of Hermine Goldberg; she answered, "No.' She was then asked if she had ever used the name Hermine Goldberg; she re-plied, "No."

Thomas C. Cummings was called as a witness in rebuttal by the government. He stated he was a Special Agent for the Federal Bureau of Investigation; that on or about September 19, 1958, he took a statement from the appellant in which she admitted to him she had used the name Hermine Goldberg on two prior occasions.

Lyn Phillip Geer was recalled to the stand. He testified that he went through a wedding ceremony in February 1958 in Marysville, Kansas, wherein the appellant Harriet Miller used the name Hermine Goldberg.

■■ It is appellant's position that she had entered into a valid "proxy" marriage with Eppley; that the introduction of the photostatic copy of the marriage certificate into evidence (1) prevents the government from urging the marriage was invalid; or (2) introducing any evidence as to the circumstances surrounding the marriage; or (3) introducing evidence appellant had used the name Hermine Goldberg. Further, appellant charges a fourth error—that the court erroneously permitted evidence of a previous marriage by appellant, on February 21, 1958, to the same person (Geer) who allegedly stood as proxy for Mr. Eppley at the subsequent July 31, 1958 marriage.

Counsel for appellant (appointed by the court below) zealously guarded appellant's rights by timely objections, motions to dismiss, etc. He cites many cases to the effect that every defendant is entitled to a fair trial. With this we agree. He cites none that the admission of the evidence here admitted constitutes error. We know of none.

■ Evidence of other transactions or a course of fraudulent conduct may be admitted to establish fraudulent intent as an element of the crime charged. Michelson v. United States, 1948, 335 U.S. 469, 475, n. 8, 69 S.Ct. 213, 93 L.Ed. 168; Sutherland v. United States, 4 Cir., 1937, 92 F.2d 305, 308. This is so even though proof of other crimes, ordinarily not admissible, is thus brought to a jury's attention. Legatos v. United States, 9 Cir., 1955, 222 F.2d 678, 683–684.

Finding no error, we Affirm.